**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARNET SMITH** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 24-cv-1422** |
| | : | |
| **WELLPATH, LLC, *et al.*,** | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**Joseph F. Leeson, Jr.**                                                                 **March 30, 2026**
**United States District Judge**


Garnet Smith asserts claims under 42 U.S.C. § 1983 against two Wellpath doctors, Dr.

Anthony Letizio and Dr. Saeed Bazel, and the SCI Phoenix Health Care Administrator, Britney

Huner.  He alleges that he was denied medical treatment for chronic skin conditions when he was

housed at SCI Pheonix.  All three Defendants have moved to dismiss the claims asserted against

them.[1]  For the reasons that follow, Huner's Motion will be granted in part and denied in part and

all claims asserted against Dr. Bazel and Dr. Letizio will be dismissed for failure to prosecute.

**I.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[2]**

**A.     Alleged Facts**

Since as early as 2015, Smith has suffered from "severe" skin conditions, such as chronic

dermatitis, eczema, psoriasis, lichen planus, and others, and has used topical creams such as

---

[1] Wellpath, LLC was also a movant in the Motion to Dismiss filed by Dr. Bazel and Dr. Letizio.  However, Smith has voluntarily dismissed his claims against Wellpath and has indicated that he wishes to proceed only against the Doctors and Huner.  (*See* ECF No. 42.)

[2] The factual allegations are taken from the Amended Complaint (ECF No. 29) and any exhibits attached to the parties' briefing that are incorporated into the Amended Complaint by reference, such as grievance documents.  *Rinaldi v. United States*, 904 F.3d 257, 261 n.1 (3d Cir. 2018).  The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

hydrocortisone to treat these conditions.  (Am. Compl. at 9.)  In 2022, Smith made multiple sick call requests for "severely chronic pain from dermatitis" because the topical creams were not helping but instead "exacerbating" his skin conditions.  (*Id*.)  One request was made specifically to Huner on November 22, 2022. (*Id*.)  Three days later, Smith was seen by a physician's assistant named Kirklin Mitchell, who prescribed medications and scheduled Smith for a skin biopsy.  (*Id*. at 9-10.)  From December of 2022 through January of 2023, Smith "repeatedly complained" to Huner about "agonizing pain from [his] chronic dermatology problems" and the "discontinuation of medication for painful rashes [and] itching."[3]  (*Id*. at 5, 10.)  However, due to a "dispute with Huner concerning payment for chronic medical care," Smith was denied medical treatment over the course of those two months until he was finally seen by Dr. Bazel on January 11, 2023.  (*Id*. at 10.)

During the January 11, 2023 appointment, Dr. Bazel performed a biopsy on Smith's left knee and renewed a topical medication.  (*Id*.)  Dr. Bazel later wrote in Smith's record that the biopsy showed eczema, psoriasis, and possible lichen planus; that Smith's case exhibited "treatment failure;" and that a "dermatologist consult will be considered, after authorization." (*Id*. at 10-11.)  On February 14, 2023, Smith was "rushed to triage" on an emergency basis for his "agonizing body rashes and itching" and seen by CRNP Ashley Senkowski.  (*Id*. at 11.) Senkowski prescribed Smith a higher dose of hydrocortisone with lotrimin but would not agree to schedule him for an outside dermatology consult unless the creams proved ineffective.  (*Id*.) Smith was charged for the "emergency sick call request" and for the medication he was

---

[3] Smith alleges that Huner was the "overseer" of the medical department and was tasked with the day-to-day "operation, supervision, and provision of health care services to inmates of SCI Pheonix."  (Am. Compl. at 5.)

prescribed, despite his skin condition being chronic. (*Id*.) Pursuant to DOC policy, inmates are provided free medical care for "documented chronic illnesses." (*Id*.)

During the three months of February through April of 2023, Smith "repeatedly complained to Huner [through] DC-153 slips" about the discontinuation of his medications for pain and of the treatment of his skin condition "due to payment disputes." (*Id*.) He was seen in triage by Dr. Bazel on April 18, 2023, who noted that his conditions were getting worse and that he was not responding to conventional therapy. (*Id*. at 12.) Dr. Bazel referred him for a "telederm consult" and performed a biopsy of Smith's upper chest area. (*Id*.) Two days later, on April 20, 2023, Smith was seen in the wound care clinic, where it was discovered that Smith developed a staph infection at his biopsy site. (*Id*.) On April 29, 2023, the antibiotic and pain medications he needed for the infected biopsy incision were discontinued "by CHCA Huner and medical staff because of a payment dispute." (*Id*.) In May of 2023, Smith sent DC-135A request slips to Dr. Letizio, Dr. Bazel, Huner, and others about the discontinuation of his pain medication for his staph infection and other dermatological issues. (*Id*.) He also requested an in-person consultation with a dermatologist. (*Id*.) The Defendants did not respond to his request. (*Id*.)

On May 5, 2023, Smith filed grievance number 1033099 concerning the "prolonged pain and suffering" he was experiencing due to the "inordinate delay or the complete denial of medical care and medicine" for his staph infection and for his worsening skin conditions, which by this point had already caused him "permanent damage . . . psychologically, emotionally, and physically." (*Id*.) The grievance names Dr. Letizio, Dr. Bazel, other medical providers, and the "medical administrator." (*Id*. at 12; ECF No. 44 at 25.) Grievance number 1033099 was denied on June 1, 2023, and Smith appealed the denial on June 9, 2023. (Am. Compl. 13.) Smith stated in his appeal that all of his medications were discontinued with no reason, which caused him to

have to make sick call requests at his own expense. (*Id*.) The denial was upheld by the Superintendent on July 5, 2023, and upheld by the Chief Grievance Officer on November 14, 2023. (*Id*. at 14.)

Shortly after filing the grievance, Smith had a "telemedical consultation" with an outside dermatologist, who prescribed Smith pain medication and "intensive dermatological treatment for 6-8 weeks." (*Id*. at 13.) Smith states that he never received the medication. (*Id*. at 14.) From June 2023 through October 2023, Smith sent several inmate request slips to medical staff, including Dr. Letizio and Huner, in which he complained about the discontinuation of his medications for his chronic skin conditions and related pain. (*Id*. at 14.) Smith alleges that because his grievance (No. 1033099) was pending at the time, no Defendant responded to his inmate requests.[4] (*Id*.) Smith states that his pain was so severe during these months that he contemplated suicide. (*Id*.) On October 21, 2023, Smith attended another telehealth consultation with an outside dermatologist, during which he complained that he was being denied medication. (*Id*.) When the consultation ended, several unidentified nurses said to Smith, "we don't treat inmates [who] file grievances." (*Id*.) Smith was never transported to an in-person dermatologist consultation. (*Id*. at 14-15.)

Based on these allegations, Smith asserts claims for deliberate indifference and retaliation against all Defendants and an additional negligence claim against the Wellpath Doctors. (*Id*. at 18-26.) He seeks money damages.

---

[4] In his Response, Smith discussed a June 12, 2023 grievance (No. 1038242) he filed against Huner about the "co-pay issue." (*See* ECF No. 44 at 16.) Although Smith purports to attach a copy of the grievance (*see id*. at 23-24), it is so faint or illegible and cannot be verified by the Court.

B.       **Relevant Procedural History**

Smith commenced this action by filing an initial Complaint on April 5, 2024.  (ECF No. 1.)  The Court granted Smith leave to proceed *in forma pauperis*, screened his complaint under 28 U.S.C. § 1915(e)(2)(B), and directed that it be served for a responsive pleading.  (ECF No. 5.)  Smith filed an Amended Complaint, the operative pleading in this case, on October 21, 2024.  (ECF No. 20.)  Dr. Bazel and Dr. Letizio filed a Motion to Dismiss the Amended Complaint on November 12, 2024 (ECF No. 33), and Huner filed a Motion to Dismiss the Amended Complaint on November 14, 2024 (ECF No. 34).  Just after these motions were filed, on November 15, 2024, Defendants Wellpath, LLC, Dr. Letizio, and Dr. Bazel filed a Suggestion of Bankruptcy and Notice of Stay in light of the Voluntary Petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 24-90533), filed by Wellpath Holdings, Inc.  (ECF No. 35.)  This case was stayed pending the bankruptcy.  (*See* ECF No. 37.)  After Confirmation of the Plan of Reorganization filed by Wellpath Holdings, Inc., *see In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tx. May 1, 2025) (Bankr. Doc. No. 2596), the stay was lifted by Order dated May 27, 2025 (ECF No. 39).  The Court's Order also directed Smith to respond to Huner's Motion to Dismiss within thirty (30) days and directed the Wellpath Defendants to show cause as to the effect of Wellpath's Chapter 11 Plan Confirmation on Smith's claims against them.  (*Id.*)

The Wellpath Defendants responded to the Court's Order by contending that Smith's claims against Wellpath are discharged and that they were not sure if Smith had opted in or out of the Third-Party Release applicable to claims against non-Debtor Wellpath employees such as Dr. Letizio and Dr. Bazel.  (ECF No. 41.)  Smith responded to the Order by stating that he no

longer wished to proceed against Wellpath but did wish to proceed against Huner, Dr. Bazel, and Dr. Letizio.  (ECF No. 42.)  In a July 29, 2025 letter to Wellpath's counsel, Smith indicated that he intended to opt out of the Plan's Third-Party Release.[5]  (ECF No.  46.)  Smith also filed a Response to Huner's Motion to Dismiss.  (ECF No. 44.)  Huner filed a Reply.  (ECF No. 45.)  On September 6, 2025, Smith advised that he would soon be released from prison and provided an address where he could be contacted.  (ECF No. 48.)

On October 6, 2025, the Court entered an Order directing Smith to respond to Dr. Bazel and Dr. Letizio's Motion to Dismiss within thirty (30) days.  (ECF No. 49.)  The Order was served on Smith at the address he provided to the Court.  (*Id*.)  On December 4, 2025, Dr. Bazel and Dr. Letizio filed a "Response" to the Order, requesting the Court to rule on their Motion to Dismiss as unopposed, as Smith has not responded to it within the deadline provided.  (ECF No. 50.)  On March 13, 2026, Dr. Bazel and Dr. Letizio filed a "Notice" with the Court, again requesting an order dismissing their claims as unopposed and noting that Smith appears to have abandoned his claims.  (ECF No. 51.)  Dr. Bazel and Dr. Letizio served both the December 4, 2025 Response and the March 13, 2026 Notice on Smith at the address he provided to the Court. Smith never responded to Dr. Bazel and Dr. Letizio's Motion to Dismiss.  It has been over a year since the Motion was filed and over five months since the Court last ordered him to respond.

## II.     HUNER'S MOTION TO DISMISS

### A.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  "A 12(b)(6)

---

[5] Counsel for Bazel and Letizio advised the Court that the document was sufficient to opt out of the Third-Party Release.  (ECF No. 47.)

motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up),

*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

### B.    Discussion

Smith asserts constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

Huner first argues that all official capacity claims against her should be dismissed. The Court agrees. "Official capacity claims are indistinguishable from claims against the governmental entity that employs" the defendant, here the Pennsylvania Department of Corrections ("DOC"). *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). Because the DOC is an agency of the Commonwealth of Pennsylvania, it is not a "person" subject to liability under § 1983, and is in any event entitled to Eleventh Amendment immunity from suit in federal court. *See Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares

8

in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983).  Thus, official capacity claims against Huner are really claims against the Commonwealth, which is shielded from § 1983 suits by Eleventh Amendment immunity.  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity.").  Accordingly, Huner's Motion will be granted as to the official capacity claims.  These claims will be dismissed.

Huner argues that all individual capacity claims asserted against her should be dismissed for two principal reasons, neither of which have merit.  First, Huner contends that Smith failed to exhaust his administrative remedies against her because grievance no. 1033099 failed to mention her by name.  The PLRA "mandates that prisoners exhaust internal prison grievance procedures before filing suit."  *Small v. Camden County*, 728 F.3d 265, 268 (3d Cir. 2013); *see* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  The PLRA requires proper exhaustion, meaning "complet[ing] the administrative review process in accordance with the applicable procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  These procedural rules are supplied by the individual prisons.  *Jones v. Block*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (determining whether "a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances").

In grievance No. 1033099, Smith complains about the "prolonged pain and suffering" he experienced due to the discontinuation of his medications and care for his staph infection and chronic skin conditions. (Am. Compl. at 12-13.) He specifically names Dr. Bazel and Dr. Letizio and other medical providers by their names. (*Id*. at 13.) Smith does not identify Huner by name but instead refers to her by her title, "medical administrator." (*Id*.) The DOC's applicable grievance policy, DC-ADM 804, sets forth a three-step process for review of inmate grievances and specifically requires inmates to "identify individuals directly involved in the event(s)."[6] However, "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones*, 549 U.S. at 219; *see also Spruill*, 372 F.3d at 225, 234 ("[T]he purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. As such, the prison can excuse an inmate's failure to do so by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance.").

Here, Smith states that he did not know Huner's name at the time he drafted grievance 1033099, so instead referred to her by her title. This is sufficient to put the prison on notice that Smith intended to assert a claim against Huner, the health care administrator at SCI Phoenix at that time. *See Travillion v. Wetzel*, 765 F. App'x 785, 789 (3d Cir. 2019) (*per curiam*) (noting that reference to defendants in grievance as "RHU Staff and Unit Management" was sufficient to comply with DC-ADM 804 §1(A)(11)); *see also Godfrey v. Little*, No. 22 -892, 2025 WL 2792250, at *16 (M.D. Pa. Sept. 30, 2025) ("Thus, courts have found a plaintiff fully exhausted their claims even though they did not include a defendant's name in their grievance where the

---

[6] The policy is also available online at https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf (last visited Mar. 27 , 2026).

plaintiff provided the title of the unnamed prison official or a functional description of the prison official's job.").  Smith properly exhausted his claims against Huner.

Second, Huner contends that the Amended Complaint does not sufficiently allege facts showing that she acted with deliberate indifference to his medical needs.  To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  "Mere negligence is not sufficient."  *Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (*per curiam*) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Smith alleges that, over the course of nearly a year, from November 2022 through October 2023, he repeatedly wrote to Huner—through inmate requests, DC-153 slips, DC-135A

11

slips, and prison grievances—about his chronic skin conditions, the "agonizing pain" they caused, and his need for medications to treat them. (Am. Compl. at 10-14.) Smith also alleges that despite repeatedly putting her on notice, Huner continually denied Smith his medications and the treatment for his skin conditions—medications and treatments that had been prescribed by doctors—because of "payment disputes." (*Id*.) Smith further alleges that Huner also discontinued his antibiotic and pain medications to treat a staph infection he developed at the infected biopsy site, again because of a "payment dispute." (*Id*. at 12.)

"[I]f necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out." *Lanzaro*, 834 F.2d at 346. Deliberate indifference can also be established "where prison officials erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates." *Id*. at 347 (internal quotation marks and citation omitted). Smith has alleged sufficient facts to reasonably infer that Huner delayed or denied him necessary medical treatment for his skin conditions for non-medical reasons. *See id*. (stating the prison officials may not "condition provision of needed medical services on an inmate's ability or willingness to pay"); *Gioffre v. County of Bucks*, No. 08-4232, 2009 WL 3617742, at *6 (E.D. Pa. Nov. 2, 2009) (finding that plaintiff adequately pled deliberate indifference against non-medical personnel who ratified policy or practice whereby drug users were denied necessary medications for "impermissible financial reasons"); *see also Moriarty v. De LaSalle*, No. 12-3013, 2014 WL 7011169, at *2 (D.N.J. Dec. 11, 2014) (stating that "when a prescribed medical treatment is denied, reduced or changed for non-medical reasons, including financial, administrative or logistical, the so-denied/reduced/changed treatment suggests an act of deliberate indifference"). Thus, Smith has plausibly alleged that

12

Huner was deliberately indifferent to his serious medical needs to state an Eighth Amendment claim.[7]  Accordingly, Huner's Motion to Dismiss will be denied.

## III.    DR. LETIZIO AND DR. BAZEL'S MOTION TO DISMISS

### A.    Standard of Review

Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action when a plaintiff fails to prosecute the case, fails to comply with the rules of procedure, or fails to comply with a court order.  *See* Fed. R. Civ. P. 41(b).  "A District Court has the authority to dismiss a suit *sua sponte* for failure to prosecute by virtue of its inherent powers and pursuant to Federal Rule of Civil Procedure 41(b)."  *See Sebrell ex rel. Sebrell v. Phila. Police Dep't*, 159 F. App'x 371, 373 (3d Cir. 2005) (*per curiam*) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).  Ordinarily, a court determining whether to *sua sponte* dismiss a case because of a plaintiff's failure to prosecute must consider several factors as set forth in *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984).  *See, e.g., Spain v. Gallegos*, 26 F.3d 439, 454-55 (3d Cir. 1994).  However, an analysis under *Poulis* usually is not required when a plaintiff willfully abandons the case or makes adjudication impossible.  *See Dickens v. Danberg*, 700 F. App'x 116, 118 (3d Cir. 2017) (*per curiam*) ("Where a plaintiff's conduct clearly indicates that he willfully intends to abandon the case, or where the plaintiff's behavior is so contumacious as

---

[7] Huner also contends that her status as the prison Health Care Administrator is not sufficient to establish the requisite personal involvement to state a constitutional claim under § 1983.  This argument is easily rejected.  Smith's allegations against Huner are not based on Huner's status as a health care administrator alone.  Rather, he alleges her personal involvement in a systematic way by which Huner repeatedly denied or delayed treatment for his skin conditions for non-medical reasons.  *See Lanzaro*, 834 F.2d at 346.  This is sufficient to state a deliberate indifference claim.  Finally, Huner contends that Smith fails to state a retaliation claim because he did not specifically identify her in his grievance, and thus, he failed to properly exhaust this claim.  As the Court already determined, however, Smith properly exhausted his claims since he identified Huner by her title even though he did not provide her name in the grievance.

to make adjudication of the case impossible, a balancing of the *Poulis* factors is not necessary."); *Baker v. Accounts Receivables Mgmt., Inc.*, 292 F.R.D. 171, 175 (D.N.J. 2013) ("[T]he Court need not engage in an analysis of the six *Poulis* factors in cases where a party willfully abandons her case or otherwise makes adjudication of the matter impossible." (citing cases)).

In the context of a pending motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), granting a defendant's motion to dismiss a case where the plaintiff has failed to respond thereto is effectively akin to sanctioning the plaintiff for failing to comply with a local rule or court order, and a "drastic" sanction like dismissal with prejudice requires a *Poulis* analysis. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 29-30 (3d Cir. 1991). A court cannot grant a Rule 12 motion as "unopposed" or "uncontested" without a *Poulis* analysis. *See, e.g., Washington v. Wenerowicz*, No. 21-2741, 2022 WL 39870, at *2 n.5 (3d Cir. Jan. 5, 2022) (*per curiam*); *Adkins v. Reynolds*, 788 F. App'x 824, 828 (3d Cir. 2019) (*per curiam*). That is so even if, as here, the plaintiff has been ordered to respond and fails to do so. *See Brzozowski v. Pa. Tpk. Comm'n*, 738 F. App'x 731, 734 (3d Cir. 2018) (*per curiam*). Thus, the Court will consider the *Poulis* factors to determine whether it is appropriate to dismiss Smith's claims against Dr. Letizio and Dr. Bazel for failure to prosecute.

### B. Discussion

In *Poulis*, the United States Court of Appeals for the Third Circuit articulated six factors to consider when determining whether to dismiss an action due to a plaintiff's failure to prosecute:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary . . . ; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

747 F.2d at 868 (emphasis omitted).  When balancing the *Poulis* factors, there is no "magic formula," "no single *Poulis* factor is dispositive," and all six factors need not be satisfied for a court to dismiss a complaint.  *See Briscoe v. Klause*, 538 F.3d 252, 263 (3d Cir. 2008).  In this case, an assessment of the *Poulis* factors weighs in favor of dismissing Smith's claims against Dr. Letizio and Dr. Bazel for failure to prosecute.

As to the first *Poulis* factor, the extent of the party's personal responsibility, it is Smith's sole responsibility to prosecute his case and comply with Court orders since he is proceed *pro se*. *See id.* at 258-59 (explaining that "a pro se plaintiff is personally responsible for complying with the court's orders" and "it is logical to hold a pro se plaintiff personally responsible for delays in his case because a pro se plaintiff is solely responsible for the progress of his case"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) (where litigant was proceeding *pro se*, any failure to comply with orders was attributable to him).  On August 23, 2025, Smith requested an informal stay through October 1, 2025, due to his pending release from prison.  (ECF No. 48).  He also attached a copy of a letter sent to defense counsel the same day, which included his change of address.  (*Id.*)  On October 6, 2025, he was ordered to file a response to Dr. Letizio and Dr. Bazel's Motion within thirty days, which was mailed to his new address.  (ECF No. 49.) The Defendants' December 4, 2025 Response and March 13, 2026 Notice were also mailed to Smith at the address he provided to the Court.  (ECF Nos. 50 & 51.)  More than five months have passed since the Order was entered, and Smith has neither filed a response to the Motion nor communicated with the Court in any other respect since his release.  Moreover, nothing on the docket suggests that Smith did not receive the Order, which was sent to the address he

provided to the Court where he would be staying after his release.[8]  Smith, as a self-represented litigant, is solely responsible for complying with the Court's orders.  Smith appears to have abandoned his claims against Dr. Letizio and Dr. Bazel.  This factor, therefore, weighs in favor of dismissal.

The second factor, prejudice to the defendants, also weighs in favor of dismissal. "Examples of prejudice include 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'"  *Adams v. Trs. of N.J. Brewery Emp. Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994) (quoting *Scarborough v. Eubanks*, 747 F.2d 871 (3d Cir. 1984)).  "[W]hile 'prejudice' for the purpose of *Poulis* analysis does not mean 'irremediable harm,' the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial."  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003).  It is unclear how this case could proceed against Dr. Bazel and Dr. Letizio without Smith's participation.  "Simply put, there is no way for Defendants to defend against Plaintiff's claims in his absence."  *Stephen v. United States Attorney Gen.*, No. 18-0615, 2020 WL 832914, at *3 (M.D. Pa. Jan. 10, 2020). Accordingly, requiring Defendants to proceed in this context would be prejudicial.

The third factor, a history of dilatoriness, must be assessed over the lifetime of the case, keeping in mind that "conduct that occurs one or two times is insufficient."  *Briscoe*, 538 F.3d at 261.  However, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as . . . consistent tardiness in complying with court orders."  *Adams*, 29 F.3d at 874.  Although Smith never technically missed a filing deadline aside from his response to Dr.

---

[8] There is also no indication that either the Response or Notice mailed to Smith by Defendants was undeliverable.

16

Bazel's Motion to Dismiss, Smith has a history of delaying the case by requests for extensions of time. (*See, e.g.* ECF Nos. 22, 26, 38, 48). Having been granted the extension following his release, Smith nevertheless failed to respond to the Motion to Dismiss, nor has he made any other communications with the Court in more than six months. This factor therefore weighs in favor of dismissal or is, at best, neutral.

The fourth factor, whether the plaintiff's conduct was willful or in bad faith, also weighs in favor of dismissal. As noted above, Smith has been expressly instructed on what he was required to do to prosecute his claims against Dr. Letizio and Dr. Bazel, namely respond to their pending Motion to Dismiss. The Order directing him to respond was sent to the address Smith provided to the Court. Moreover, Smith was served with the Defendants' December 4, 2025 Response to Court Order and March 13, 2026 Notice, both of which express that Smith must have abandoned his claims against them because he has not responded. Smith's failure to file a response to the Motion, especially after accusations of abandonment, may fairly be understood as willful.

An examination of the fifth factor, the effectiveness of sanctions other than dismissal, reveals that no other sanction would be effective. Smith is proceeding *pro se* and his apparent refusal to respond to the pending Motion, if left unaddressed, would be a complete barrier to his claims against Dr. Letizio and Dr. Bazel proceeding beyond the pleadings stage. Moreover, it would cause further delay for the other Defendant, Britney Huner, who is defending against claims asserted against her. Given the procedural posture of this case, Smith's *pro se* and *in forma pauperis* status, and Smith's apparent unwillingness to prosecute his claims against Dr. Letizio and Dr. Bazel by responding to their pending Motion, it is difficult to determine what lesser sanction might be available or appropriate in this context. *See Adonai-Adoni v. King*, 506

17

F. App'x 116, 119 (3d Cir. 2012) (*per curiam*) ("Because Adonai-Adoni proceeded *pro se* and *in forma pauperis*, monetary sanctions were not a viable form of alternative sanction."); *Guyer v. Beard*, 907 F.2d 1424, 1430 (3d Cir. 1990) (affirming dismissal of case where dilatory conduct "made adjudication of the case impossible [because] any lesser sanction would not have furthered the interests of justice").  As such, no other sanction would be effective.  The fifth factor thus weighs in favor of dismissal.

Under the sixth *Poulis* factor, the Court must consider if the claims or defenses are meritorious.  *See Poulis*, 747 F.2d at 869-70 ("A claim or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense.").  As the Court previously determined when it screened Smith's Amended Complaint and ordered it to be served on the Defendants, Smith has stated plausible deliberate indifference claims against Dr. Bazel and Dr. Letizio.  However, the other *Poulis* factors weigh in favor of dismissal.  A plaintiff may have a meritorious claim, but he must prosecute that claim in accordance with the Federal Rules of Civil Procedure and this Court's orders to prove that claim and entitle him to judgment if warranted.  When a plaintiff fails to participate in the legal process, those claims cannot move forward.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Britney Huner's Motion to Dismiss.  It will be granted as to the official capacity claims and denied as to all individual capacity claims.  In addition, the Court concludes that the *Poulis* factors weigh in favor of dismissing Smith's claims against Dr. Bazel and Dr. Letizio pursuant to Federal Rule of Civil Procedure 41(b) for Smith's failure to prosecute.  Simply put, there is no way for his claims

against these Defendants to proceed without Smith's participation.  An appropriate order will be filed separately.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**